## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOSEPH P. MCCOOL,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **CITY OF PHILADELPHIA, ET AL.,** | : | |
| **Defendants** | : | **NO. 06-3393** |

### MEMORANDUM AND ORDER

PRATTER, J.                                                                                     JUNE 27, 2007

Joseph P. McCool served Philadelphia for a quarter of a century as a firefighter.  He

wants to do so again – so much so that he has sued the City of Philadelphia as well as various

City officials in their official capacity[1] (collectively, the "Defendants") pursuant to 42 U.S.C. §

1983 for various constitutional violations related to the handling of his application to return to

the ranks of these notable public servants.  Specifically, Mr. McCool charges the Defendants

with violating his right to intrastate travel (Count I), his right to equal protection (Count II), his

right to procedural due process (Count III), his right to engage in the common occupations of life

(Count IV), and his rights under the Privileges and Immunities Clause (Count V).  The

---

[1] The named individual Defendants are Romulo L. Diaz, Jr., Karen A. Hyers, Lloyd Ayers
and Linda Orfanelli.  According to the Amended Complaint, these individuals hold the following
positions and responsibilities: Mr. Diaz is the solicitor for the City of Philadelphia, making him
the chief legal officer and counselor for the City of Philadelphia and ultimately responsible for
enforcement of the rules and regulations promulgated under the Philadelphia Home Rule Charter.
(Amd. Compl. ¶ 7.)  Ms. Hyers is the Human Resources Manager for the Philadelphia Fire
Department.  (Id. at ¶ 8.)  As such, Ms. Hyers has final decision-making authority for
determining whether applicants for the position of Philadelphia firefighter satisfy the one-year
durational residency requirement that is the root of this dispute.  (Id.)  Mr. Ayers is the Fire
Commissioner for the City of Philadelphia, and is responsible for overseeing and implementing
the policy for hiring firefighters for the City.  (Id. at ¶ 9.)  Ms. Orfanelli is the Personnel Director
for the City of Philadelphia.  (Id. at ¶ 10.)  As such, she is responsible for implementing the
City's hiring policy including, but not limited to, the durational residency requirement.  (Id.)

Defendants move to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for which relief can be granted.  Mr. McCool opposes the motion.[2]  For the reasons discussed more fully below, the Court will deny the Motion as to Mr. McCool's intrastate travel claim, but grant the Motion as to the remainder of the Amended Complaint.

**FACTUAL AND PROCEDURAL BACKGROUND**

For the purposes of a motion to dismiss, the facts alleged in the Amended Complaint are deemed to be true.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

Mr. McCool was a Philadelphia firefighter for over twenty-five years, serving as a Captain for his last six years.  (Amd. Compl. ¶ 9.)  During that time period, Mr. McCool lived in the City of Philadelphia.  (Id. at ¶ 10.)  Shortly after his retirement from the Philadelphia Fire Department in 2001, Mr. McCool sought reinstatement but was told that he would have to reapply for the position of firefighter.  (Id. at ¶¶ 11, 13.)  Mr. McCool followed the normal hiring procedures and took the firefighter examination, which he passed with a score of 95 (on a 100-point scale).  (Id. at ¶ 14-15.)  In December 2001, the City notified Mr. McCool that he was ranked number 516 on the eligibility list.  (Id. at ¶ 15.)  In January 2003, Mr. McCool moved to Feasterville, Pennsylvania, which is located in Bucks County, almost directly adjacent to the Philadelphia County line.  (Id. at ¶ 16.)

On April 18, 2005, the Philadelphia Fire Department sent a letter to Mr. McCool at his former Philadelphia address informing him that his rank on the eligibility list had been reached

---

[2] Mr. McCool concedes that he does not have a claim under the Privileges and Immunities Clause (see Pl. Response 6 n.1) and, therefore, does not oppose dismissal of Count V.

2

and inviting him to attend an orientation.  (Id. at ¶ 17.)  Mr. McCool did not receive the letter but, having learned from other sources that his rank had been reached, sent a letter on May 12, 2005 to Philadelphia Fire Department Personnel office, informing the Defendants that he would establish residency in Philadelphia "on or before the hiring date."  (Id. at ¶ 18.)  By letter dated May 23, 2005, Karen Hyers informed Mr. McCool that, pursuant to City of Philadelphia Civil Service Regulation 30.01 ("Regulation 30.01"), he was "not eligible for consideration at this time" because he had "not been a resident of the City of Philadelphia for at least 12 months." (Id. at ¶ 20.)

City of Philadelphia Civil Service Regulation 30.01 provides:

> **30.01 REQUIREMENTS.**   An Ordinance of Council, Bill 79, effective April 16, 1953, enacted pursuant to authority of Section 7-401(u) of the Charter, requires each employee to have been a bona fide resident of the City for a period of one (1) year prior to his appointment and after appointment to maintain his bona fide residence in the City, unless such residence requirement is waived by the Commission.

Mr. McCool alleges that he was otherwise qualified to be a firefighter and was denied the position solely because he failed to meet the residency requirement set forth in Regulation 30.01 as interpreted by the Defendants.[3]  (Amd. Compl. ¶ 27.)

Under the plain language of Regulation 30.01, Mr. McCool is in fact eligible for consideration because he meets the literal terms of the residency requirement as written, that is, he has been "a bona fide resident of the City of Philadelphia for a period of one year prior to his appointment."  Indeed, Mr. McCool was a bona fide resident of the City for 25 years prior to –

---

[3] Mr. McCool does not challenge the bona fide residency requirement included in Regulation 30.01, as distinguished from the durational residency requirement.

3

albeit not *immediately* prior to – consideration of his candidacy.  Of course, Regulation 30.01 no

where states when (immediately or otherwise) the prior one-year period need be logged.  The

Defendants, however, contend that the "historical" interpretation of Regulation 30.01, for which

they present no authority, requires bona fide residence for the 12 months *immediately* prior to

appointment.   Given the disparity between the express terms of the Regulation and the

Defendants' interpretation of it, the Court will decide only whether Regulation 30.01 is

unconstitutional as interpreted by the Defendants in the present case and leave for another day the

question of whether Regulation 30.01 is unconstitutional *as written*.

**LEGAL STANDARD**

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint.  Conley, 355 U.S.

at 45-46.  Such a motion will be granted only when it is "certain that no relief could be granted

under any set of facts which could be proved by the plaintiff."  Ransom v. Marrazzo, 848 F.2d

398, 401 (3d Cir. 1988).  In making such a determination, the Court "must only consider those

facts alleged in the complaint and accept all of those allegations as true."  ALA, Inc. v. CCAIR,

Inc., 29 F.3d 855, 859 (3d Cir. 1994) (citing Hishon v. King & Spaulding, 467 U.S. 69, 73

(1984)).  The Court must also accept as true all reasonable inferences that may be drawn from the

allegations, and view those facts and inferences in the light most favorable to the non-moving

party.  Rocks v. Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989).  The Court, however, "need not

accept as true 'unsupported conclusions and unwarranted inferences,'" Doug Grant, Inc. v. Great

Bay Casino Corp., 232 F.3d 173, 183-84 (3d Cir. 2000) (citing City of Pittsburg v. West Penn

Power Co., 147 F.3d 256, 263 n.13 (3d Cir. 1998)), or the plaintiff's "bald assertions" or "legal

conclusions," Morse v. Lower Merion Sch. Dist., 132 F.3d. 902, 906 (3d Cir. 1997).  A

4

complaint should be dismissed "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 249-50 (1989) (quoting Hishon, 467 U.S. at 73).

**DISCUSSION**

Mr. McCool seeks to invoke Section 1983 which imposes civil liability upon any person who, acting under color of state law, deprives another person of any rights, privileges or immunities secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; Greunke v. Seip, 225 F.3d 290, 298 (3d Cir. 2000). To state a cause of action under Section 1983, Mr. McCool must allege sufficient facts which, if true, show that the Defendants, while acting under color of state law, deprived him of a right secured by the Constitution or laws of the United States. Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995); Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993).

    **A.    Count I: Violation of the Right to Intrastate Travel**

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV. The Due Process Clause has a substantive component. See, e.g., Planned Parenthood of S.E. Pennsylvania v. Casey, 505 U.S. 833, 846-47 (1992) ("it is settled that the due process clause of the Fourteenth Amendment applies to matters of substantive law as well as to matters of procedure") (citation omitted); Nicholas v. Pennsylvania State University, 227 F.3d 133, 138-139 (3d Cir. 2000).

1.      The Substantive Due Process Right to *Intra*state Travel[4]

In any substantive due process case, the Court must first determine the standard of review.  Sammon v. New Jersey Bd. of Medical Examiners, 66 F.3d 639, 643-44 (3d Cir. 1995). In determining the appropriate standard, the Court "must look solely to the allegations of the complaint and the provisions of the challenged statute." Id. at 644.  The choice of standard of review turns on whether a "fundamental right" is at stake.  Id. (quoting Casey, 947 F.2d at 688).

The Court of Appeals for the Third Circuit has recognized that the substantive component of the Due Process Clause encompasses a right to intrastate travel.  Lutz v. City of New York, 899 F.2d 255 (3d Cir. 1990).  In Lutz, the Court of Appeals considered a "cruising" ordinance that prohibited "driving repeatedly around a loop of certain major roads through the heart of the city." Id. at 256.  Although it ultimately upheld the ordinance, the court explained that an unenumerated constitutional right of *intra*state travel exists.  Id.  The contours of this right, however, are not clearly defined.  Id. at 268, 269 (describing the right to intrastate travel as a "right to localized movement," the "right to travel locally through public spaces and roadways," and "the right to move freely about one's neighborhood or town").   The issue presented here in this case is whether the right recognized in Lutz guarantees only the right to "localized intrastate movement on public roads," as suggested by the Defendants, or whether it must be construed more broadly.

a.      Does the Right to Intrastate Travel Encompass the Right the Change Residences?

The Supreme Court has recognized that the right to *inter*state travel guarantees the right

───────────────

[4] Mr. McCool does not allege that Regulation 30.01 violates his right to *inter*state travel.

to change residences within the United States, reasoning that because the right to travel is fundamental, "any classification which serves to penalize the exercise of that right, unless shown to be necessary to promote a *compelling* government interest, is unconstitutional." Shapiro v. Thompson, 394 U.S. 618, 634 (1969) (striking down on equal protection grounds a minimum durational residency requirement imposed as a condition of eligibility for welfare benefits), overruled in part on other grounds by Edelman v. Jordan, 415 U.S. 651 (1974); see also Dunn v. Blumstein, 405 U.S. 330 (1972) (striking down durational residency requirements imposed as conditions of eligibility to vote); Memorial Hospital v. Maricopa County, 415 U.S. 250 (1974) (striking down durational residency requirement to receive free nonemergency medical care).

After reviewing the Supreme Court's right-to-travel jurisprudence, the Court of Appeals for the Third Circuit concluded that "the right to move freely about one's neighborhood or town, even by automobile, is "implicit in the concept of ordered liberty" and "deeply rooted in the Nation's history." Lutz, 899 F.2d at 268. Just as the court declined to "distinguish a more particularized, protected tradition of travel or wandering on foot . . . from an unprotected tradition of localized travel by automobile," id., there is little logic in distinguishing between the right to move about locally and the right to change residences within a state. The distinction between the right to *inter*state travel and the right to *intra*state travel appears to be equally illusory inasmuch as both are based on the fundamental notion that "'[w]e are all citizens of the United States; and, as members of the same community, must have the right to pass and repass through every part of it without interruption, as freely as in our own States.'" United States v. Guest, 383 U.S. 745, 758 (1966) (quoting Smith v. Turner, 48 U.S. 283, 1849 WL 6405 (1849));

Lutz, 899 F.2d at 268.[5]

Indeed, the Supreme Court has highlighted the close relationship between interstate and intrastate travel, albeit in the context of segregation laws, which inhibited both kinds of travel. See Bell v. State of Maryland, 378 U.S. 226, 255 (1964) (noting that "[t]he right of any person to travel interstate irrespective of race, creed, or color is protected by the Constitution.  Certainly his right to travel intrastate is as basic.").  Other lower courts, in different contexts, have also held that a right to intrastate travel is co-extensive with the right to interstate travel.  See, e.g., Grace v. City of Detroit, 760 F. Supp. 646, 651 (E.D. Mich. 1991) (noting, in context of durational residency requirements, "we see no logical distinction between the right of a person to travel between states (which is protected by the United States Constitution) and the right to travel between locations in the State of Michigan (which we find to be protected by the Michigan Constitution). The problem is identical and the analysis ought to be identical"); King v. New Rochelle Municipal Housing Auth., 442 F.2d 646, 648 (2d Cir.), cert. denied, 404 U.S. 863 (1971) ("It would be meaningless to describe the right to travel between states as a fundamental precept of personal liberty and not to acknowledge a correlative constitutional right to travel within a state.").

---

[5] While the Court of Appeals did not so expressly hold, its reasoning in Lutz suggests that the right to intrastate travel is closely analogous to the right to interstate travel.  See generally Lutz, 899 F.2d 255 (navigating from Supreme Court right-to-travel cases to arrive at a right to intrastate travel within the substantive component of the Due Process Clause).  The expansion of the "right to localized movement" to encompass the right to change residences within a given state runs parallel to the Supreme Court's expansion of the right to interstate travel to encompass not just a general freedom of movement across state lines but also the right to change residences within the United States.  See Shapiro, 394 U.S. at 634, and progeny.

In the specific context of durational residency requirements,[6] courts have construed the right to intrastate travel to encompass the right to change residences within a state.  See Callaway v. Samson, 193 F. Supp. 2d 783 (D.N.J. 2002) (applying Lutz to strike down as unconstitutional as applied a durational residency requirement for political candidates); Bruno v. Civil Serv. Comm'n of City of Bridgeport, 472 A.2d 328 (Conn. 1984) (holding that the right to intrastate travel is a fundamental right protected by the United States Constitution and applying strict scrutiny to a durational residency requirement for public employment on this basis); State v. Burnett, 755 N.E. 2d 857, 865-66 (Ohio 2001) ("Much like the right to interstate travel, the right to intrastate travel has a long, historical recognition in the conscience and traditions of our people. . . .'") (quoting Kent v. Dulles, 357 U.S. 116, 125 (1958)).  But see Cuvo v. City of Easton, 678 A.2d 424 (Pa. Commw. 1996) (applying rational basis standard of review to durational residency requirement).

The Court concludes that although parochialism is not per se without justification for all purposes, the right to intrastate travel as set forth in Lutz encompasses the right to change residences within a state.  The inquiry for Mr. McCool, however, does not end there.  The Court must determine whether Mr. McCool has alleged sufficient facts to state a claim for which relief can be granted.

---

[6] "Durational residency requirements are those which condition eligibility for some benefit or privilege on how long one has lived in the jurisdiction . . . ." Grace, 760 F. Supp. at 651.  Durational residency requirements "directly impinge[] on the exercise of . . . the right to travel" because they "penalize those persons who have traveled from one place to another to establish a new residence during the qualifying period.  Such laws divide residents into two classes, old residents and new residents . . . . [and] single out the class of bona fide state and county residents who have recently exercised th[e] constitutionally protected right [to travel], and penalize such travelers directly." Dunn, 405 U.S. at 336-38.

### b.     Does the Amended Complaint Allege a Violation of the Right to Intrastate Travel?

To withstand the Defendants' motion to dismiss, Mr. McCool must have alleged facts that state a violation of his right to intrastate travel.  The Federal Rules require merely "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  Leatherman v. Tarrant County, 507 U.S. 163, 168 (1993) (citation omitted).

For example, in Roman v. City of Reading, No. 02-4763, 2004 WL 569522 (E.D. Pa. 2002), the court granted the defendants' motion to dismiss with respect to the plaintiff's right-to-intrastate-travel claim because the plaintiff failed to allege "that some *affirmative* government regulation contravenes the right to travel."  Id. at *8 (emphasis in original).  Rather, the plaintiff, having been intentionally or unintentionally fired upon in his car by unknown assailants, alleged only that the defendants' failure to protect visitors impinged his freedom to travel.  Id.  Noting that "no court has recognized government *inaction* as the basis for such a claim" and relying on the Supreme Court's holding that a "failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause," the court found the allegations insufficient to state a constitutional violation.  Id. (emphasis in original) (quoting DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 197 (1989)).

In contrast, in Callaway, a more closely analogous case, the court held that a New Jersey statutory durational residency requirement was unconstitutional as applied to the plaintiff on the grounds that it violated his right to intrastate travel.  193 F. Supp. 2d at 784.  The court assumed, without discussion, that the right to intrastate travel guarantees the right to change residences as

well as the more general right to literally move about within a state.  Id. at 786-87 ("The residency requirement in this case does plainly burden Callaway's right to travel within the State of New Jersey.")[7]

The facts presented by Mr. McCool are not dissimilar to those in Callaway.  Mr. McCool challenges a durational residency requirement that burdens his ability to change residences within the Commonwealth of Pennsylvania.  In contrast to the plaintiff in Roman, Mr. McCool points to Regulation 30.01 as a specific "*affirmative* government regulation [that] contravenes the right to travel."  Cf. Roman, 2004 WL 569522, at *8.  Thus, because the right to intrastate travel protects the right to change residences, Mr. McCool has sufficiently alleged affirmative state action, namely, Regulation 30.01 as interpreted here, that interferes with that right.

## 2.    Standard of Review

The Court must further determine whether Mr. McCool has alleged sufficient facts that, if proved, state a claim under the standard of review set forth in Lutz.  The Court of Appeals held that an intermediate level of scrutiny applies where the right to intrastate travel is concerned.  Lutz, 899 F.2d at 256.  Thus, state action that infringes upon the right to "localized intrastate movement" will be sustained only if it is "narrowly tailored to serve significant government interests – not necessarily compelling ones."  Id. at 267, 269.

_____

[7] Applying the intermediate scrutiny standard of review set forth in Lutz, the court in Callaway identified three possible countervailing state interests: (1) ensuring that candidates will be familiar with local issues and know the voters, (2) preventing "carpetbagging," and (3) reinforcing geographic limitations to prevent "externalities."  Id. at 787.  Emphasizing the loose relationship between the one-year residency requirement and the protection of these interests, the court held that the statute was unconstitutional as applied to the plaintiff, who had lived in the city his entire life and had worked in the ward in which he sought election for twenty years.  Id. at 787-89.

The Defendants rely on Cuvo v. City of Easton, 678 A.2d 424 (Pa. Commw. 1996), a Pennsylvania Commonwealth Court decision that upheld a durational residency requirement under a rational basis standard of review.  The court held that the City of Easton's durational residency requirement for firefighters was rationally related to the City's legitimate interest "in the safety of its residents and in having potential firefighter candidates who have familiarity with the community and knowledge of the local geography allowing for quicker response on the job." Id. at 430.  The Defendants contend that Philadelphia's durational residency requirement is similarly justified.

Under the intermediate standard of review set forth in Lutz, Regulation 30.01 must be (1) narrowly tailored to achieve (2) a significant government interest.  It is uncontested that Philadelphia's interest in ensuring the safety of its residents by employing firefighters who have "familiarity with the community and knowledge of the local geography" is a significant interest. Mr. McCool, however, has pleaded facts sufficient to demonstrate that Regulation 30.01 is not narrowly tailored.  Mr. McCool alleges that he was a Philadelphia firefighter for 25 years, and even promoted to the rank of Captain for six of those years.  Surely, these facts demonstrate Mr. McCool's knowledge of the City and his qualifications for the position of firefighter.  The fact that he allegedly was denied the position solely on the basis of the Regulation 30.01 residency requirement suggests a possible "disconnect" between the one-year "prior" residency requirement – as interpreted by the parties in the present case – and the City's interest in hiring Philadelphia-savvy firefighters.[8]

---

[8] The Defendants contend that Mr. McCool's right-to-intrastate-travel claim must be dismissed because he failed to allege that the "defendants' actions are so egregious as to shock the conscience."  (Def. Mem. 5.)  This standard of review is appropriate only where the plaintiff

In sum, the right to intrastate travel protects against such durational residency requirements as Regulation 30.01, as interpreted by the parties here.  Mr. McCool has alleged sufficient facts to state a violation of this right under the <u>Lutz</u> intermediate scrutiny standard, and to give the Defendants adequate notice of his claims.  Because Mr. McCool has stated a cause of action under the Fourteenth Amendment, he has also stated a cause of action under Article I, § 1 of the Pennsylvania Constitution.  <u>See</u> <u>Nixon v. Dept. of Public Welfare</u>, 839 A.2d 277, 286-88 (Pa. 2003) (holding that rights under Article I, § 1 of the Pennsylvania Constitution are

---

is challenging an executive, as opposed to legislative, act.  Because Mr. McCool is challenging a legislative act rather than an executive act, the Defendants' proposed "shocks the conscience" standard does not apply.

"There is a distinction in the standard of review for legislative and executive acts that allegedly violate substantive due process."  <u>County Concrete Corp. v. Town of Roxbury</u>, 442 F.3d 159, 169 (3d Cir. 2006).  A legislative act will withstand a substantive due process challenge if the government "identifies a legitimate state interest that the legislature could rationally conclude was served by the statute, although legislative acts that burden certain 'fundamental' rights may be subject to stricter scrutiny.  <u>Id.</u>  "[N]on-legislative state action violates substantive due process if 'arbitrary, irrational, or tainted by improper motive,' or if 'so egregious that it shocks the conscience.'"  <u>Id.</u> (quoting <u>Nicholas</u>, 227 F.3d at 139 n.1); <u>Alexander v. Whitman</u>, 114 F.3d 1392, 1403 (3d Cir. 1997).  This distinction stems from the fact that the "shocks the conscience" standard is an individual culpability standard that would be difficult if not impossible to apply to legislative acts.  <u>See</u> Umhofer, "Confusing Pursuits: <u>Sacramento v. Lewis</u> and the Future of Substantive Due Process in the Executive Setting," 41 Santa Clara L. Rev. 437, 483 (2001) ("It would make little or no sense to ask whether a particular law was passed with intent to injure or with deliberate indifference to a person's constitutional rights.").

Mr. McCool alleges that Regulation 30.01 violates the substantive component of the Due Process Clause because it violates his right to intrastate travel.  Mr. McCool thus presents a facial challenge to the Regulation, which applies to the population as a whole.  The Third Circuit Court of Appeals has explained that "[e]xecutive acts, such as employment decisions, typically apply to one person or to a limited number of persons, while legislative acts, general laws and broad executive regulations, apply to large segments of society."  <u>Nicholas</u>, 227 F.3d at 139 (citations omitted).  While Regulation 30.01 influences employment decisions, it is most analogous to a "legislative" act or executive regulation that applies to a large segment of society.  Therefore, in evaluating Regulation 30.01, the Court should apply the intermediate scrutiny standard of review set forth in <u>Lutz</u>, and not the "shocks the conscience" standard of review.  <u>See</u> <u>id.</u> at 139 n.1; <u>Lutz</u>, 899 F.2d at 267, 269.

substantially co-extensive with rights under the Due Process Clause of the Fourteenth Amendment and applying the same analysis).

**B.      Count II: Violation of the Equal Protection Clause[9]**

The Fourteenth Amendment guarantees that no state shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. Amend. XIV.  This guarantee of equal protection, however, must coexist with the practical necessity that most legislation creates classifications for one purpose or another, and that these classifications may disadvantage various groups or persons.  See Romer v. Evans, 517 U.S. 620, 631 (1996) ("not all classifications are per se unconstitutional or automatically subject to heightened scrutiny").  Thus, the level of scrutiny or standard of review employed by the Court depends upon the nature of the classification that is being addressed.

Where a law "neither burdens a fundamental right nor targets a suspect class [a court] will uphold the legislative classification, so long as it bears a rational relation to some legitimate end."  Romer, 517 U.S. at 631.  However, a classification that is drawn on suspect lines or burdens a fundamental right will be subject to strict scrutiny, passing constitutional muster only if it is narrowly tailored to serve a compelling state interest.  Dunn, 405 U.S. at 335; Clark v. Jeter, 486 U.S. 456, 461 (1988).

The Defendants contend, and Mr. McCool does not contest, that Regulation 30.01, as interpreted by the parties in this case, does not target a suspect class because it distinguishes only between persons who have lived in Philadelphia during the 12 months immediately prior to

---

[9] The fact that Regulation 30.01 was not enacted by a legislative body does not affect the Court's equal protection inquiry.  See Delaware River Basin Comm'n v. Bucks County, 641 F.2d 1087, 1093 n.11 (3d Cir. 1981); Schumacher v. Nix, 965 F.2d 1262, 1266 n.7 (3d Cir. 1992).

becoming eligible for public employment and persons who have not, favoring the former and disadvantaging the latter.  Thus, the rational basis standard of review should apply unless Regulation 30.01 burdens a fundamental right.  Mr. McCool asserts that the Lutz intermediate standard of review applies because Regulation 30.01 burdens the right to intrastate travel.

The level of scrutiny applied in equal protection cases involving the right to travel is something of a chameleon; it varies to fit the contours a specific set of facts.  See Maldonado v. Houstoun, 157 F.3d 179, 185 (3d Cir. 1998) ("[T]he law with respect to the constitutional implications of the right to travel is unsettled and in need of clarification.").  The Supreme Court at times has applied strict scrutiny to durational residence laws that impinge on the right to interstate travel, see Maricopa County, 415 U.S. 250; Dunn, 405 U.S. 330; Shapiro, 394 U.S. 618, and at other times applied what appears to be some form of a heightened rational basis test, see Attorney General of New York v. Soto-Lopez, 476 U.S. 898 (1986); Hooper v. Bernalillo County Assessor, 472 U.S. 612 (1985); Zobel v. Williams, 457 U.S. 55 (1982).[10]  This is because the standard of review does not necessarily depend on merely the potential burden on the right to interstate travel; rather, it also depends on the right or benefit at stake that is available to old residents but withheld from new residents.  As the Court explained,

> [i]n addition to protecting persons against the erection of actual barriers to interstate movement, the right to travel, when applied to residency requirements, protects new residents of a state from being disadvantaged because of their recent migration or from otherwise being treated differently from longer term residents. In reality, right

---

[10] As the Court of Appeals for the Third Circuit observed, "[t]he Supreme Court has yet to articulate why it has applied rational basis review in some right to travel cases and strict scrutiny in others, except to say that where a law cannot meet the minimum rationality requirement there is no need to undertake a more searching inquiry."  Schumacher, 965 F.2d at 1267.

> to travel analysis refers to little more than a particular application of equal protection analysis. Right to travel cases have examined, in equal protection terms, state distinctions between newcomers and longer term residents.

Zobel, 457 U.S. at 61.  Thus, the standard of review is more closely connected to the subject matter of the restricted benefit, than with the burden on the right to travel.  See Dunn, 405 U.S. at 335 ("To decide whether a law violates the Equal Protection Clause, we look, in essence, to three things: the character of the classification in question; the individual interests affected by the classification; and the governmental interests asserted in support of the classification.").

For example, as noted above, the Supreme Court applied strict scrutiny to strike down on equal protection grounds durational residency requirements that limited newcomers' access to welfare benefits, voting and non-emergency medical care.  See Shapiro, 394 U.S. at 627 (holding that the statutory prohibition of benefits to residents of less than a year creates a classification which constitutes an invidious discrimination denying them equal protection of the law); Dunn, 405 U.S. at 336 (holding that state law conditioning right to vote on durational residency requirement does not further any compelling state interest and violates the equal protection clause of the Fourteenth Amendment); Maricopa County, 415 U.S. at 269 (holding durational residency requirement as a condition to receiving nonemergency hospitalization or medical care creates an invidious classification that impinges on right of interstate travel by denying newcomers basic necessities of life and, absent a compelling state interest, is unconstitutional as a violation of equal protection clause).

Since Maricopa County, however, a majority of the Court has never subjected a durational residency requirement to strict scrutiny.  Instead, the Court has employed some form

16

of rational basis review. However, as our Court of Appeals has cautioned, this tendency "does not establish that rational basis is now the appropriate test when evaluating durational residency requirements as applied to welfare benefits [because t]he Court in those cases merely employed its version of rational basis analysis because the challenged laws could not even survive rational basis review." Maldonado, 157 F.3d at 186. For example, in Sosna v. Iowa, 419 U.S. 393, 95 (1975), the Court upheld a state statutory requirement that a petitioner in a divorce action be a resident of the state for one year preceding the filing of the petition. While the Court did not expressly state the standard of review it applied in Sosna, the dissent characterized it as closer to a rational basis standard of review than strict scrutiny. See id. at 420-421 (Marshall, J., dissenting) ("The Court, however, has not only declined to apply the 'compelling interest' test to this case, it has conjured up possible justifications for the State's restriction in a manner much more akin to the lenient standard we have in the past applied in analyzing equal protection challenges to business regulations.").

Thus, as the Court of Appeals for the Third Circuit observed, "Shapiro and its progeny are Equal Protection cases in the sense that they involved classifications that were suspect because they penalized a group of people on the basis of their having exercised a constitutionally protected right to travel." Lutz, 899 F.2d at 265; see also Maricopa County, 415 U.S. at 261. But the penalty must be sufficiently significant – or affect a sufficiently significant right – to, in fact, constitute a bona fide penalty with the potential of deterring travel. See Soto-Lopez, 476 U.S. at 903 (in deciding whether a durational residency requirement sufficiently impinges upon the right to travel or migrate to trigger strict scrutiny, the Court looks to see whether the challenged law's "primary objective" is to impede interstate travel; whether it "penalize[s] the

exercise of that right;" or whether it "actually deters such travel").  Hence the focus, albeit

implicit, on the subject matter of the restriction or withheld benefit.  See, e.g., Maricopa County,

415 U.S. at 258-59 (applying strict scrutiny because of finding that "medical care is as much 'a

basic necessity of life' to an indigent as [the] welfare assistance" at issue in Shapiro) (citation

omitted).  The Court's subsequent departure from strict scrutiny in right-to-travel equal

protection cases further illustrates the focus the Court has placed on the benefit at stake, rather

than the mere fact that the right to travel may be burdened.

Accordingly, the Court will determine the standard of review applicable to Mr. McCool's

equal protection claim on the basis of whether "the challenged law's primary objective is to

impede [intrastate] travel; whether it penalizes the exercise of that right; or whether it actually

deters such travel."  Maldonado, 157 F.3d at 186 (quoting Soto-Lopez, 476 U.S. at 903)

(quotations omitted).[11]  Here, rational basis review is the appropriate standard to apply.  The

benefit restricted by the classification is the right to public employment.  Unlike a restriction on

welfare benefits or emergency medical care, which impose costs on the government, Regulation

30.01 appears to be primarily aimed at ensuring familiarity with the City rather than limiting the

expenditure of government funds to bona fide residents.  Nonetheless, the former has been

recognized as a penalty and a deterrent to travel, and Regulation 30.01 operates much to the same

effect.  The durational residency restrictions on voting, welfare and medical care essentially

_____

[11] While the Court of Appeals for the Third Circuit explicitly recognized a fundamental
right to intrastate travel in Lutz, it specifically declined in that case to apply a heightened level of
scrutiny to the equal protection claim.  See Lutz, 899 F.2d at 258 n.4 (noting that "[a]ssuming
that it does not burden fundamental rights, the cruising ordinance, which creates no suspect
classifications, easily survives equal protection scrutiny, for it is rationally related to York's
legitimate objective of ensuring orderly traffic flow on its public streets.").

imposed an unavoidable period of purgatory for new residents, and Regulation 30.01 does the same.  New Philadelphia residents must wait a year before becoming eligible to even *apply* for a firefighter position.  See Nehring v. Ariyoshi, 443 F. Supp. 228, 236 (D. Haw. 1977) (applying strict scrutiny to strike down durational residency requirement for public employment on equal protection and right to interstate travel grounds).

There is, however, a distinction between this case and Sosna, where the Court upheld a durational residency requirement restricting access to divorce, and Shapiro, Dunn and Maricopa County.  The distinction lies not in the effect of the durational residency requirements on migrants but on the benefit at stake, that is, the substance of the penalty.  Unlike voting, welfare, and medical care, which constitute fundamental rights and/or "a basic necessity of life," public employment, and firefighter positions in particular, are simply one narrow sector of the job market as a whole.  There is no effort to deny people who want to work to pursue gainful employment in general.  Thus, as in Sosna, the benefit at stake here does not warrant heightened scrutiny.  The Court agrees with the defense argument that there is no fundamental right to public employment.  Massachusetts Bd. of Retirement v. Murgia, 427 U.S. 307, 313 (1976) (holding that governmental employment is not *per se* a fundamental right requiring strict scrutiny on equal protection challenge); Nicholas, 227 F.3d at 142 (holding that public employment is neither a property interest "deeply rooted in the Nation's history and traditions," nor is it "implicit in the concept of ordered liberty").  And finally, there is no indication that Regulation 30.01 could potentially deter people from exercising their right to intrastate travel to the extent that it would unlawfully impinge upon that right.  Therefore, the Court will apply a rational basis standard of

19

review to Mr. McCool's federal and state equal protection claims.[12]

The rational basis test "requires only that a law 'classify the persons it affects in a manner rationally related to legitimate governmental objectives.'" Schumacher, 965 F.2d at 1269 (quoting Schweiker v. Wilson, 450 U.S. 221, 230 (1981)).  Rational basis review accords great deference "to legislative determinations as to the desirability of particular statutory discriminations." City of New Orleans v. Dukes, 427 U.S. 297, 303 (1976).  Under this standard, a statutory distinction does not violate the Equal Protection Clause "if any state of facts reasonably may be conceived to justify it. " Sullivan v. Stroop, 496 U.S. 478, 479 (1990).  Nevertheless, a classification "must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." Reed v. Reed, 404 U.S. 71, 76 (1971) (citation omitted).  Here, the Court must determine whether the City of Philadelphia has a legitimate interest in classifying applicants on the basis of whether they have been City residents for at least 12 months prior to consideration, and, if so, whether Regulation 30.01 is rationally related to this interest.  See Schumacher, 965 F.2d at 1270.

Mr. McCool contends that Regulation 30.01 is an "unreasonable regulation" because it is not rationally related to the stated objective, which is to ensure that firefighters are familiar with the local geography.  As discussed above, Mr. McCool's circumstances amply demonstrate at least one way Regulation 30.01 may unnecessarily exclude qualified candidates who possess the

---

[12] Equal protection claims arising under the Fourteenth Amendment and Article I, § 26 of the Pennsylvania Constitution are essentially the same, James v. SEPTA, 477 A2d 1302, 1305-07 (Pa. 1984), as are the applicable standards of review, Donahue v. Public School Employee's Retirement Sys., 834 A.2d 655, 659 (Pa. Commw. 2003).

requisite familiarity despite not having lived in Philadelphia during the prior year.

Under the rational basis standard of review, however, the overly broad nature of Regulation 30.01 is insufficient to satisfy Mr. McCool's burden of demonstrating that "the legislative facts on which the classification [of the Regulation] is apparently based could not reasonably be conceived as true by the governmental decisionmaker."  See Sammon, 66 F.3d at 645-46.  In promulgating the residency requirement, the Civil Service Commission apparently determined that adequate familiarity with the City could be gained by 12 months of residence, thus ensuring that only candidates with adequate familiarity and bona fide residence in the City were considered.  Apparently, the Commission preferred the exclusion of otherwise qualified candidates over any additional expenditure of resources to determine adequate familiarity by some means other than residency.

These facts and assumptions could "reasonably be conceived as true" by the Commission and, therefore, the Commission could rationally conclude that Regulation 30.01 serves the stated purpose of establishing applicants' familiarity with the City of Philadelphia.  See Sammon, 66 F.2d at 645.  As the Court of Appeals has cautioned, it is not for the Court to second-guess the governmental decisionmaker, or to determine whether the desired goal is actually served by the challenged statute or regulation.  Rather, the Court need only determine whether the legislature "rationally might have believed . . . that the desired end might be served."  That is certainly the case here.  Thus, the Court concludes that "no relief [based on equal protection grounds] could be granted under any set of facts that could be proved consistent with the allegations" and dismissal of Mr. McCool's equal protection claims is appropriate.  See H.J. Inc., 492 U.S. at 249-50.

C.        Count III: Violation of Procedural Due Process

In order to state a claim for a violation of the right to procedural due process, a plaintiff must show that he was deprived of a protected property or liberty interest.  Mathews v. Eldridge, 424 U.S. 319, 332 (1976).  Procedural due process requires notice and an "opportunity for some kind of hearing" before a person is deprived of a protected interest, except for "extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event."  Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 570 n.7 (1972).

1.        Mr. McCool's Alleged Property Interest in the Position of Firefighter

To establish a property interest that affords procedural due process protection, a plaintiff must demonstrate that he or she has a "legitimate claim of entitlement" to the asserted right. Roth, 408 U.S. at 577.   State law determines whether such a property interest exists.  Elmore v. Cleary, 399 F.3d 279, 282 (3d Cir. 2005).  In Pennsylvania, public employees generally are employees at will and, therefore, do not have a legitimate claim of entitlement in their continued employment.  Id.  Prospective job applicants likewise do not have a property interest in their anticipated employment unless they can demonstrate a legitimate claim of entitlement to such employment.  Foxworth v. Pennsylvania State Police, 402 F. Supp. 2d 523, 542 (E.D. Pa. 2005).

A property interest may be "created expressly by state statute or regulation or aris[e] from government policy or a mutually explicit understanding between a government employer and an employee."  Carter v. City of Philadelphia, 989 F.2d 117, 120 (3d Cir. 1993); Stana v. Sch. Dist. of City of Pittsburgh, 775 F.2d 122, 126 (3d Cir. 1985) ("Property interests . . . can also arise from written or unwritten state or local government policies or from 'mutually explicit understandings' between a government employer and employee.") (citing Perry v. Sindermann,

408 U.S. 593, 601-02 (1972)).

Here, Pennsylvania law provides that "[t]he names of all persons who shall attain the average percentage required by law or the rules and regulations of the board or commission having in charge the civil service examination in any county, city, or borough, shall be placed on the eligible list for appointments under the civil service in such counties, cities, and boroughs." 53 P.S. § 601. Philadelphia's Home Rule Charter, 351 Pa. Code §§ 7.7-200 *et seq.*, in turn provides that all civil service regulations shall be submitted by the Personnel Director to the Civil Service Commission and Administrative Board for approval. Id. at 7-400. At the end of this chain of administrative authorization and delegation is the Philadelphia Civil Service Commission and Personnel Director, which have promulgated Civil Service Regulations in accordance with the Home Rule Charter. See Civil Service Regulations 1.01 *et seq.* The residency requirement at issue here, Regulation 30.01, was thus enacted pursuant to the authority of Section 7-401 of the Home Rule Charter.[13]

The Court of Appeals for the Third Circuit has held that presence on an eligibility list does not create a property interest triggering procedural due process requirements where occupancy of even a high position on the list entitles an applicant to "nothing more than *consideration* for employment when openings occur." Anderson v. City of Philadelphia, 845 F.2d 1216, 1220 (3d Cir. 1988) (emphasis added). In contrast, where occupancy of a position on the eligibility list is a "central factor" in the employer's "communicated policy" to award

---

[13] Regulation 30.01 provides for a waiver of the residency requirement but "[t]he Commission will grant waivers of residency requirements only on request of appointing authorities submitted through and with the recommendation of the Director or on request of the Director." Regulation 30.02.

positions, remaining on the eligibility list constitutes a "legitimate entitlement." Stana, 775 F.2d at 126-27.

For example, in Stana, a certified teacher was removed from an eligibility list after the school district received and reviewed (without giving the teacher an opportunity to be heard) a confidential negative evaluation of her by her current employer. 775 F.2d at 127. The Pennsylvania Public School Code provides that "no person shall be appointed . . . whose name does not appear among the three highest names upon the proper eligible list." Id. at 126 n.2. In addition, the school district "had an established policy for placement and rank on the list and for maintenance of names on that list for a specified period of time." Id. at 126. The court held that the school district, through the policies it promulgated to implement the state statute on teacher hiring, created a "legitimate entitlement" in "remaining on the eligibility list." Id. This combination of the existing policy or rule and "an explicit understanding" was sufficient to constitute a property interest, which triggered procedural due process requirements. Id. at 126-27. More recently, the court of appeals explained that "[i]n holding a school employee's place on an employment eligibility list constituted a protected property interest, we accepted plaintiff's argument that the school district's policy for maintaining the list created a 'mutually explicit understanding' that a person who earned a place on the eligibility list will not be removed from the list for four years." Baraka v. McGreevey, 481 F.3d 187, 206 (3d Cir. 2007).

By contrast, in Anderson, which was decided after Stana, the court of appeals held that occupancy of "high positions on the civil service eligibility lists" entitled the plaintiff, a City law enforcement candidate, to "nothing more than consideration for employment when openings occurred" and, therefore, did not constitute a property interest triggering due process

requirements.  845 F.2d at 1220-21.  In distinguishing <u>Stana</u>, the court implied that the hiring

policy promulgated by the school district in <u>Stana</u> gave greater weight to high rankings on the

eligibility list, whereas in <u>Anderson</u>, the list merely ranked police candidates for further

consideration and entitled them to nothing more than that.  <u>Id.</u>  In particular, the court anchored

its holding in the discretion "given to agencies in setting hiring procedures and making hiring

decisions evident in the governing statute."  <u>Id.</u> at 1221 n.4 (<u>citing</u> 4 Pa. Code § 97.16).

Like the Fire Department, the Philadelphia law enforcement departments base their hiring

on the results of a competitive civil service examination.  <u>Id.</u> at 1217.  Individuals who pass the

exam are placed on a certified eligibility list and as openings occur in the police and prison

departments, individuals "high up on the certified eligibility lists" are notified.  <u>Id.</u>  Far from

being guaranteed a position, however, each notified individual "must then pass a number of

additional tests before being found qualified for employment by the hiring department."  <u>Id.</u>

These additional tests include a medical examination, a psychiatric examination, a background

investigation and a polygraph test.  <u>Id.</u>  Under these circumstances, held the court, "there can be

no tenable claim of entitlement to employment."  <u>Id.</u> at 1221 (<u>citing</u> <u>Robb v. City of Philadelphia</u>,

733 F.2d 286, 292-93 (3d Cir. 1984)).

Similarly, in <u>NAACP v. Town of Harrison</u>, 940 F.2d 792 (3d Cir. 1991), the court of

appeals held that firefighter applicants who were tested and added to a hiring eligibility list for a

municipal firefighter position did not have a protected property interest in their ranking.

Focusing on the discretion afforded the State Department of Personnel by New Jersey law with

respect to "the establishment, cancellation, and duration of eligibility lists," the court held that

the various "statutory and administrative provisions" establishing such discretionary authority

"undermine[d] [the] claim to a protected property interest in continuation of a specific eligibility list or in a particular position on that list."  Id.  This conclusion appears to be consistent with Pennsylvania law, which provides municipal personnel directors and civil service commissions with similar authority and discretion.  See Philadelphia Civil Service Regulations §§ 1.01 et seq., Philadelphia Home Rule Charter, 351 Pa. Code §§ 7.7-200 et seq.; Pennsylvania General Municipal Law, 53 P.S. §§ 601 et seq.

Thus, the primary factor for determining whether a position on an eligibility list is a "legitimate entitlement" is whether the employer has a communicated general policy of hiring people off the list without further consideration of their candidacy or discretion.  Compare Stana, 775 F.2d at 127 n.3 (holding that "remaining on the eligibility list, which was a prerequisite to a teaching position, was a 'legitimate entitlement' that the School District had created through the policies it promulgated") with Anderson, 845 F.2d at 1221 (holding that where employers "may and do exercise broad discretion in hiring . . . . there can be no tenable claim of entitlement to employment," regardless of status on an eligibility list).

Here, Mr. McCool alleges that he "had a property and/or liberty interest in the job as firefighter."  (Amd. Compl. ¶ 36.)  Mr. McCool, however, does not allege that the Philadelphia Fire Department had a communicated policy of hiring candidates without further discretionary consideration once their number on the eligibility list was reached.  (See id. at ¶¶ 36-38.)  Mr. McCool alleges only that the Fire Department simultaneously notified him that his rank had been reached and invited him to an "orientation." (Id. at ¶ 17.)  As the Court of Appeals for the Third Circuit made clear in Anderson and Elmore (both decided after Stana), mere presence on an eligibility list alone is insufficient to create a "legitimate entitlement" triggering procedural due

process protections.

In the system at issue here, when a candidate's rank on the Fire Department's eligibility list is reached, he or she is merely certified for "processing." *Entry Level Selection Process for Firefighter and Fire Service Paramedic*, Philadelphia Fire Department, *available at*, http://webapps-test.phila.gov/fire/int.asp?menucat=Forms_Menu&page=forms#menucat=About_Menu&page=firefighter (last visited 6/18/07). "Processing" entails a screening interview with departmental representatives; a drug test; a criminal background investigation; a work history background investigation; qualifications screening; and screening by the "state of PA for EMT training approval (for Firefighter applicants)." Id.[14]

This process is analogous to the post-eligibility-list process at issue in Anderson. In that case, the court of appeals held that being on the eligibility list "entitled the plaintiffs to nothing more than consideration for employment when openings occurred." Anderson, 845 F.2d at 1220. The court concluded that where the defendants "may and do exercise broad discretion in hiring," there "can be no tenable claim of entitlement to employment." Id. at 1221. This is precisely the case presented to the Court here. Mr. McCool's presence on the eligibility list entitled him to

---

[14] The Court may consider this information in ruling on the Motion to Dismiss. In deciding a motion to dismiss, the Court may only consider those facts alleged in the complaint" and attached exhibits that the complaint incorporates pursuant to Federal Rule of Civil Procedure 10(c). ALA, Inc. v. CCAIR, Inc., 29 F.3d 855, 859 (3d Cir. 1994). However, courts may take judicial notice of matters of "public record." City of Pittsburgh v. West Penn Power Co., 147 F.3d 256, 259 (3d Cir. 1998). While "public record" is narrowly defined for purposes of a motion to dismiss, see Pension Ben. Guar. Corp. v. White Consol. Industries, Inc., 998 F.2d 1192, 1197 (3d Cir. 1993) (defining public record for purposes of motion to dismiss as "criminal case dispositions such as convictions or mistrials, letter decisions of government agencies, and published reports of administrative bodies"), the Court concludes that the published Philadelphia Fire Department hiring "processing" procedures fall within this category. Accordingly, the Court will take judicial notice of them.

further consideration, not a guaranteed position.  In contrast to the school district list in Stana, the Fire Department's eligibility list merely organized qualified candidates for review once positions became available.

### 2.   Mr. McCool's Alleged Liberty Interest

The liberty interest component of the Fourteenth Amendment "denotes not merely freedom from bodily restraint but also the right of the individual to contract, *to engage in any of the common occupations of life*, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of [one's] own conscience, and generally to enjoy those privileges long recognized . . . as essential to the orderly pursuit of happiness by free men."  Meyer v. Nebraska, 262 U.S. 390, 399 (1923) (emphasis added).  A liberty interest may arise from the Constitution itself, or by reason of guarantees implicit in the word 'liberty', or it may arise from an expectation or interest created by state laws or policies. Wilkinson v. Austin, 545 U.S. 209, 221 (2005).  The issue is whether, under the facts alleged here, the right to pursue an occupation constitutes a liberty interest.[15]

The right "to follow a chosen profession free from unreasonable governmental interference comes within both the liberty and property concepts of the Fifth and Fourteenth Amendments."  Piecknick v. Commonwealth, 36 F. 3d 1250, 1259 (3d Cir. 1994).  Indeed, "the right to work for a living in the common occupations of the community is of the very essence of the personal freedom and opportunity that it was the purpose of the [Fourteenth] Amendment to secure."  Traux v. Raich, 239 U.S. 33, 41 (1915).  However, "it is the right to pursue a calling or

---

[15] Mr. McCool bases his liberty interest argument only on the right to pursue an occupation.

occupation, and not the right to a specific job, that is protected by the Fourteenth Amendment."
Piecknick, 36 F.3d at 1259 (quoting Wroblewski v. City of Washburn, 965 F.2d 452, 455 (7th
Cir. 1992)).  Thus, the Constitution protects only against state actions that threaten to deprive
persons of the right to pursue their chosen occupation.  Id.  Accordingly, state actions that
exclude a person from one particular job or job opening are not actionable in suits brought
directly under the due process clause.  Id. (quoting Bernard v. United Township High Sch. Dist.
No. 30, 5 F.3d 1090, 1092 (7th Cir. 1993)).

        The Court of Appeals for the Third Circuit has held that "an employment action
implicates a Fourteenth Amendment liberty interest only if it (1) is based on a 'charge against
[the individual] that might seriously damage his standing and associations in the community' . . .
or (2) imposes on him a stigma of other disability that forecloses his freedom to take advantage
of other employment opportunities."  Robb, 733 F.2d at 294 (citing Roth, 408 U.S. at 573).
Other courts have held that the right to pursue an occupation was unreasonably burdened where
preferential treatment by government officials made it impossible for disfavored companies to
compete, see Cowan v. Corley, 814 F.2d 223, 225 (5th Cir. 1987), or where a company was
removed from the government's rotating call list after having been on the list for nine years, see
Nall v. Pitre, No. 88-965 (M.D. La. June 9, 1989) (slip op.).  See also Truax, 239 U.S. at 41
(invalidating on equal protection grounds a state law requiring companies to employ 80% United
States citizens).  As the Supreme Court summarized, the cases holding that the right to choose
and pursue an occupation constitutes a liberty interest protected by the Due Process Clause "all
deal with a complete prohibition of the right to engage in a calling . . . ."  Conn v. Gabbert, 526
U.S. 286, 286 (1999) (distinguishing "the sort of brief interruption" that occurred in that case

where an attorney could not advise a client testifying before a grand jury because prosecutors executed a warrant to search his person at the same time the client was testifying).

In <u>Piecknick</u>, the Court of Appeals for the Third Circuit held that a towing operator did not have a protected property or liberty interest in his priority status for accidents occurring on state highways within a certain zone.  The plaintiffs alleged that the Pennsylvania State Police violated their procedural due process rights when they awarded towing jobs on state highways to a towing service that allegedly was not authorized to receive those jobs pursuant to a State Police "assigned zone towing" policy.  36 F.3d at 1253.  The alleged policy limited assignment of towing services to a designated operator to only one zone.  <u>Id.</u>  The court held that the plaintiffs did not have a liberty interest in the receipt of towing jobs pursuant to the alleged policy because adding a designated Zone 2 operator to the list of operators whom the police could call to perform services in Zone 1 was "not an unreasonable interference with Piecknick's right to pursue its chosen occupation."  <u>Id.</u> at 1261.

<u>Piecknick</u> distinguished other cases where courts held that a liberty interest in the right to pursue an occupation existed.  For example, where a person's license to pursue a chosen occupation is revoked or substantially interfered with, the court of appeals held that procedural due process requirements were triggered.  <u>See</u> <u>Herz v. Degan</u>, 648 F.2d 201 (3d Cir. 1981).  Similarly, as previously discussed, the court has held that an employment action implicates the Due Process Clause where there is harm to an individual's reputation.  <u>See</u> <u>Robb</u>, 733 F.2d at 294 (<u>citing</u> <u>Roth</u>, 408 U.S. at 573).  In <u>Stana</u>, for example, the court held that removal from the eligibility list as a result of a negative evaluation *could* implicate the liberty interest in following a chosen profession, but because Ms. Stana had failed to allege publication of the list (and thus

harm to her reputation), she could not claim a deprivation of a liberty interest.  Stana, 775 F.2d at 125 n.1.

Thus, to adequately state a procedural Due Process claim based on a liberty interest, Mr. McCool must have alleged sufficient facts which, if proved, would demonstrate that his general ability to pursue his occupation was somehow compromised by the decision not to hire him on the grounds that he failed to meet the residency requirement.  The Amended Complaint alleges simply that Regulation 30.01 "violated [Mr. McCool's] right to engage in one of the common occupations of life, i.e. firefighter."  (Amd. Compl. ¶ 25.)  Apparently, Mr. McCool defines "*Philadelphia* firefighter" (as opposed to being a firefighter in a different city) as an occupation, not a specific job.  Mr. McCool thus implicitly expands the right to pursue a chosen occupation to the right to pursue that occupation *in a specific location.*

Even under this expansive (and legally unsupported) interpretation, however, Mr. McCool has failed to allege how he has been prohibited from pursuing the occupation of firefighter.  As in Stana and Conn, there is no evidence that Mr. McCool's "income, reputation, clientele, or professional qualifications were adversely affected . . . ."  Conn, 526 U.S. at 293 (Stevens, J., concurring).  There is nothing to prevent him from starting the application process all over again as a bona fide resident of Philadelphia, or that would prejudice him if he did choose to reapply.  The law has set forth a relatively high bar for determining whether a state action infringing on the right to pursue an occupation constitutes a liberty interest triggering due process procedural guarantees.  Mr. McCool has not met that bar here.

**D.     Count IV: The Right to Engage in Common Occupations of Life**

**1.     Federal Substantive Due Process Claim**

The Fourteenth Amendment protects the right "to engage in any of the common occupations of life." Meyer, 262 U.S. at 399; Roth, 408 U.S. at 572.  That right, however, "is nevertheless subject to reasonable government regulation." Conn, 526 U.S. at 291-92.  The first step in a substantive due process case is to determine the standard of review.  Sammon, 66 F.3d at 643-44.  The choice of standard of review turns on whether a "fundamental right" is at stake.  Id. at 644 (quoting Casey, 947 F.2d at 688).  In determining the appropriate standard of review, the Court "must look solely to the allegations of the complaint and the provisions of the challenged statute."  Id.  The Court of Appeals for the Third Circuit has held that "[s]tate restrictions on the right to practice a profession receive rational basis review rather than higher scrutiny."  Id. at 645.

"Where rational basis review is appropriate, a statute withstands a substantive due process challenge if the state identifies a legitimate state interest that the legislature rationally could conclude was served by the statute."     Sammon, 66 F.3d at 645.  As the Court of Appeals has explained, "the law need not be in every respect consistent with its aims to be constitutional.  It is enough that there is an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it."  Rogin v. Bensalem Township, 616 F.2d 680, 689 (3d Cir. 1980) (quoting Williamson v. Lee Optical of Oklahoma, Inc., 348 U.S. 483, 487-88 (1955)).  Indeed, the court emphasized that

> a court engaging in rational basis review is not entitled to second guess
> the legislature on the factual assumptions or policy considerations
> underlying the statute. If the legislature has assumed that . . . it will
> serve the desired goal, the court is not authorized to determine . . .
> whether the desired goal has been served. The sole permitted inquiry

> is whether the legislature rationally might have believed . . . that the desired end would be served. When legislation is being tested under rational basis review, "those challenging the legislative judgment must convince the court that the legislative facts on which the classification [of the statute] is apparently based could not reasonably be conceived as true by the governmental decisionmaker."

Sammon, 66 F.3d at 645-646 (quoting Vance v. Bradley, 440 U.S. 93 (1979)).

In Sammon, the court of appeals affirmed the dismissal of the complaint pursuant to Rule 12(b)(6) where the plaintiff alleged a New Jersey statute setting forth a licensing scheme for midwifery "unconstitutionally deprive[d] [her] of her ability to earn a living at her chosen profession." Sammon, 66 F.3d at 644. Under the rational basis standard of review, the statute's "classification of what it takes to provide assurance of acceptable quality services from a midwife must be upheld unless they [sic] could not reasonably be conceived as serving that purpose." Id. at 646. Applying this standard, the court held that New Jersey's interest in protecting the health and welfare of the mother and child were legitimate state interests, and that the regulatory scheme at issue was rationally related to those interests. Id.

Here, the Amended Complaint alleges that Regulation 30.01 was "arbitrary, capricious, irrational and without any reasonable relationship to a legitimate governmental purpose in violation of the Plaintiff's right to engage in any of the common occupations of life." (Amd. Compl. ¶ 41.) As previously discussed, however, Regulation 30.01 is rationally related to the legitimate government objective of ensuring firefighters' familiarity with the city in which they will serve. See Part B, supra, at pp. 19-21.

### 2.    State Substantive Due Process Claim

The Pennsylvania Supreme Court has interpreted Article I, § 1 of the Pennsylvania

33

Constitution as guaranteeing an individual's right to engage in any of the common occupations of life.  Hunter v. Port Authority of Allegheny County, 419 A.2d 631, 635 (Pa. Super. 1980) (citations omitted).  This right "may not be interfered with, under the guise of protecting the public interest, by legislative action which is arbitrary or without reasonable relation to some purpose within the competency of the state to effect."  Adler v. Montefiore Hospital Assoc. of W. Pennsylvania, 311 A.2d 634, 640 (Pa. 1973) (citing Meyer, 262 U.S. at 399-400).  The Pennsylvania Supreme Court has recognized that this is a "more restrictive rational basis test." Nixon v. Commonwealth, 839 A.2d 277, 288 n.15 (Pa. 2003) ("Although the due process guarantees provided by the Pennsylvania Constitution are substantially coextensive with those provided by the Fourteenth Amendment, a more restrictive rational basis test is applied under our Constitution.").  Under the Pennsylvania Constitution, "a law must not be unreasonable, unduly oppressive or patently beyond the necessities of the case, and the means which it employs must have a real and substantial relation to the objects sought to be attained."  Id. at 287 (quoting Gambone v. Commonwealth, 101 A.2d 634, 637 (Pa. 1954)).

For example, applying the above standard, the Pennsylvania Supreme Court struck down as unconstitutional provisions of the Older Adults Protective Services Act, which prohibited employment in elder care facilities of persons convicted of certain crimes.  Nixon, 839 A.2d at 289.  The court reasoned that the law did not have a substantial relationship to the objective of protecting older adults because it allowed some persons with criminal records to continue working in elder care facilities while barring others.  Id. at 288-90.  Likewise, in Warren County Human Servs. v. State Civil Servs. Comm'n, 844 A.2d 70 (Pa. Super. 2004), the Pennsylvania Superior Court struck down as unconstitutional provisions of the Child Protective Services Law that

34

imposed a lifetime ban on previously convicted individuals from employment in child-care facilities.

Here, as Mr. McCool's particular circumstances demonstrate, Regulation 30.01 may not have a "real and substantial relation to the objects sought to be attained."  See Nixon, 839 A.2d at 287.  Regulation 30.01 excludes candidates like Mr. McCool, who may have lived and worked in Philadelphia for a long period of time, but admits candidates who technically meet the residency requirement as interpreted by the Defendants but who may be less familiar with the city.  Indeed, a lifelong resident may be entirely unable to navigate from his or her own neighborhood.  As the District Court for the District of New Jersey pointed out in Callaway, "a hermit who walled himself up in his apartment for a year, receiving food through a slot in the door, would be deemed more knowledgeable" than Mr. McCool, who was not simply a long-term resident of Philadelphia, but also a long-term Philadelphia firefighter.  See Callaway, 193 F. Supp. 2d at 788.

Nevertheless, states "are often permitted to sweep too broadly, or too narrowly, in carrying out legitimate regulatory goals."  Callaway, 193 F. Supp. 2d at 788 (citing Weinberger v. Salfi, 422 U.S. 749, 771-73 (1975)).  Under Pennsylvania's "more restrictive" rational basis standard, it is a closer call, but Regulation 30.01, for all the reasons discussed above, nonetheless is facially rationally and substantially related to the stated objectives, even though it may not be the best way, or the most narrowly tailored way or even an effective way, to achieve those stated objectives.  That is not for the Court to say.  The Court must dismiss Mr. McCool's claims alleging a violation of the right to engage in the common occupations of life.

**CONCLUSION**

Because the right to intrastate travel encompasses the right to change residences within a

state, and Mr. McCool has alleged sufficient facts to state a violation of this right, the Court will

deny the Motion to Dismiss as to Count I.  However, because Mr. McCool has otherwise failed to

state a claim for which relief can be granted, the Court will dismiss the remainder of his claims.

An Order consistent with the Memorandum follows.




BY THE COURT:



S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

JOSEPH P. MCCOOL,                         :                    CIVIL ACTION
      Plaintiff,                              :
                        :
    v.                                       :
                        :
CITY OF PHILADELPHIA, ET AL.,              :
      Defendants                              :                    NO. 06-3393

## ORDER

AND NOW, this 27th day of June, 2007, upon consideration of the Defendants' Motion to

Dismiss (Docket No. 10) and the Plaintiff's response thereto (Docket No. 13), it is hereby

ORDERED that the Motion is GRANTED IN PART and DENIED IN PART as follows:

1. The Motion is DENIED as to Count I;

2. The Motion is GRANTED as to Count II;

3. The Motion is GRANTED as to Count III;

4. The Motion is GRANTED as to Count IV; and

5. The Motion is GRANTED as to Count V.

The Plaintiff shall file a Second Amended Complaint consistent with this Memorandum

and Order within 20 days of the date of this Order.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge